Rita M. Lingwood SBN 214145
Attorney at Law
7405 Greenback Ln. #194
Citrus Heights, CA 95610
Telephone: (916) 202-3552
Facsimile:  (866) 646-1739
Email:  ritalingwood@yahoo.com

Attorney for Plaintiff,
CHRISTIAN A. PLAINTIFF

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN A. ROMERO,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC; BANK OF AMERICA, a National Association; and BAC HOME LOANS SERVICING LP,  and DOES 1-10, inclusive,<br><br>    Defendants. | Case No.: 2:14-cv-02954-TLN-DAD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT  NATIONSTAR'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        February 20, 2015<br>Time:       10:00 a.m.<br>Crtm:       27, 8th FL. |

   Plaintiff, CHRISTIAN A. PLAINTIFF (hereinafter "Plaintiff"), submits this opposition to the Motion to Dismiss the Complaint brought by Defendant NATIONSTAR MORTGAGE LLC (hereinafter "Nationstar".

PLAINTIFFS' OPPOSITION TO DEFENDANT NATIONSTAR'S MOTION TO DISMISS            1
MEMORANDUM OF POINTS AND AUTHOPRITIES IN SUPPORT THEREOF

**TABLE OF CONTENTS**

I.   INTRODUCTION ………………………………………………………………....  5

II.  STATEMENT OF FACTS ……………………………………………………….. 6

III. LEGAL ARGUMENT IN OPPOSITION TO MOTION TO DISMISS ……………… 8

   A.  Legal Standard ……………………………………………………………. 8

   B.  Plaintiff's Claim for Breach of Contract Against Nationstar Does Not Fail ……… 10

   C.  Plaintiff's Claim for Breach of The Implied Covenant of Good Faith and Fair Dealing against Nationstar Does Not Fail ……………………………………… 11

   D.  Plaintiff Has Sufficiently Pleaded A Cause of Action for Violation Of The HBOR Against Nationstar …………………………………………….………  13

   E.  Plaintiff Has Sufficiently Pleaded A Cause of Action for Negligence Against Nationstar ……………………………………………………….………..  14

      A.  When a loan servicer solicits a loan modification or otherwise agrees to Consider a homeowner for modification, recent case law in this district Has held that duty of care may be found. ……………………………………. 15

      B.  Plaintiff has plead sufficient facts at this pleading only stage to state a valid Claim against Nationstar for negligence related to the servicing of his Residential mortgage. ……………………………………………………….. 16

   F.  Plaintiff's Claim for Declaratory Relief Against Nationstar …………………….. 17

   G.  Plaintiff's Claim for Injunctive Relief Against Nationstar Does Not Fail……….. 17

IV. CONCLUSION ……………………………………………………………………  18

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. Johnson,* 355 F.3d 1179 (2004) ................................................................................. 9

*Alvarez v. BAC Home Loan Servicing, L.P.* 228 Cal.App.4th 941 ....................................... 16

*Banks v. JPMorgan Chase Bank, N.A.*, 2014 U.S. Dist. LEXIS 164565, (C.D. Cal. Nov. 19, 2014) ........ 16

*Bell Atlantic Corp. v. Twombly*, ............................................................................................. 9

*Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ...................................... 9

*Edwards v. Direct Access, LLC* ............................................................................................ 9

*Garcia v. Ocwen Loan Servicing, LLC*, 2010 U.S. Dist. LEXIS 45375 (N.D. Cal.) ............... 15

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (1990) ………………………………………… 9

*Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) ...................................................... 9

*Kennedy v. Wells Fargo Bank, N.A.* (citation ........................................................................ 15

*Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 64-65 (2013) ..................... 16

*McGarvey V. JP Morgan Chase Bank, N.A.*, U.S. Dist. Court, ED, California, October 10, 2013 ............ 15

*McKinley v. CitiMortgage, Inc.* 13-cv-1057-TLN-CKD, 2014 WL 651917 at 1 .................... 14

*Penermon v. Wells Fargo Home Mortgage*, 2014 U.S. Dist. LEXIS 71992 (N.D. Cal. May 22, 2012) .... 16

*Public Utility Dist. No. 1 of Grays Harbor v IDACORP, Inc.* 379 F.3d 641 (2004) ................. 9

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ......................................................................... 9

*Sequra v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 143038, (C.D. Cal. Sept. 26, 2014) ........... 15

*Simpson v. AOL Time Warner, Inc.* 452 F.3d 1040, 1046 (9th Cir. 2006) ............................... 9

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) ................................................. 9

*United States v. City of Redwood City*, 640 F.2d ................................................................... 8

*West v. JP Morgan Chase Bank NA*, 214 Cal.App.4th 780, 781 (2013) .................................. 10

ii

PLAINTIFFS' OPPOSITION TO DEFENDANT NATIONSTAR'S MOTION TO DISMISS          3
MEMORANDUM OF POINTS AND AUTHOPRITIES IN SUPPORT THEREOF

**Statutes**

Cal. Civ. Code § 2923.4 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Cal. Civ. Code § 2923.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Civ. Code § 2923.6 subd. (g)................................................................................ 11, 13

Cal.Civ.Code §2923.7........................................................................................................ 13

Fed. Civ. Pro. Rule 12 ………………………………………………………………… 8

Fed. Civ. Pro. 159a …………………………………………………………………….. 9

iii

**INTRODUCTION**

Case precedent supports Plaintiff's belief that he has an executed Trial Payment Plan with Bank of America ("BANA").  Plaintiff communicated with BANA for over a year and a half in trying to get the permanent loan modification in place.

Due to economic conditions Plaintiff was forced to file bankruptcy. In this bankruptcy Plaintiff, while not actually checking the box "Reaffirmed", did state that it was his intent to continue working toward a loan modification with BANA.  This statement constitutes a reaffirmation of the loan.  BANA sold the servicing rights to Nationstar while the loan modification process was still in progress.

Nationstar filed a Notice of Default ("NOD") but Plaintiff alleges he did not receive any of the legally required notices prior to the recordation of the NOD.   Nationstar refused to acknowledge the executed TPP presented by the Plaintiff.  Plaintiff was contacted by Nationstar and was told that he would have to submit a new loan modification package, which Plaintiff immediately did.  The 90 day period of the NOD was ticking down,  and during this period Plaintiff contacted Nationstar numerous times to determine if his application was approved.  Nationstar did assign a single point of contact ("SPOC"), one Jasmine Russell, but over the course of four months Plaintiff was able to speak with her only once.  Plaintiff spoke with a different Nationstar representative each and every time he called, getting conflicting and misleading information each time. Plaintiff recorded nearly all his conversation with Nationstar representatives.  After being told by Adam H. of Nationstar that until his loan modification package was "complete", and submitted to the investor's (Wells Fargo) underwriter, that the foreclosure process would not be suspended, and that by law they did not have to do so.  Plaintiff had submitted what case law holdings states is a "facially complete" loan modification application.  Further, Plaintiff had been assured

on numerous occasions by representatives of Nationstar that all documents had been received, the file was submitted to underwriting, and that an answer would be forthcoming within a week.

The last contact in mid-November Plaintiff had with Nationstar was finally from his SPOC, Jasmine Russell, who stated that they still wanted more documents; that no, the application had not been sent to underwriting; and the foreclosure would be proceeding until a "complete" package had been processed.

With the 90 day reinstatement period at an end, Plaintiff felt his only option was to file this law suit and request a temporary restraining order in order to prevent imminent and irreparable harm from the untimely sale of his home.

**STATEMENT OF FACTS**

On or about September 9, 2005, Plaintiff purchase his Property and executed a promissory note secured by a deed of trust against the property in the amount of $268,000.00 (the "Loan"). (Compl. ¶ 6.) Subsequently Countrywide acquired the loan and the BANA acquired Countrywide.

On or about September 14, 2009, Plaintiff received a letter from BAC regarding setting up the trial period for the Home Affordable Modification Program ("HAMP") loan modification, stating the agreement starts upon payment of $1,395.00 and that documents would be sent to begin the loan modification process.  (Compl. ¶ 11 and Exh. 1.)

On or about September 27, 2009, Plaintiff received a letter from BAC regarding "how to start making your new trial period mortgage payment … under HAMP along with the Home Affordable Modification Trial Period Plan" document, dated October 1, 2009.  Said document required payments of $1,395.00 to be made October 1, 2009, November 1, 2009 and December 1, 2009, as well as signing and returning the documents. (Compl. ¶ 12, Exh. 2.)  Plaintiff signed the documents and returned them with requested additional information and then made all three required payments.  BAC did not return a signed copy of the TPP.

During 2010 and a portion of 2011, Plaintiff continually tried to speak with a representative at BAC to get the status on his loan modification. Plaintiff was told he did not have to make any additional trial period plan payments and that his loan modification was being processed. (Compl. ¶ 13.)

In April 2011 Plaintiff was forced, due to economic difficulties, to file for bankruptcy, which was discharged January 20, 2013. (Compl. ¶ 14.) During the time period his bankruptcy was open, he was told by BAC that they would not be able to speak with him, nor provide any assistance in getting his loan modification until the bankruptcy was discharged, (Compl. ¶ 14) apparently a BAC guideline and not one required or followed by HAMP.

During January 2013 and up until August 2014, Plaintiff continued his quest via telephone calls and emails in an attempt to complete the loan modification as promised in the Trial Payment Plan and under HAMP guidelines.

After Plaintiff received a letter with a Notice of Default and Assignment of Beneficial Interest showing Nationstar was the new owner of his note. (Compl. Pg. 5 ¶ 16; RJN Exh. 8.) Plaintiff contacted Nationstar and told them of his TPP with BAC and that he wanted to finish the process to obtain his loan modification. Plaintiff was told by Nationstar that he would have to start the process over with them. (Compl. ¶ 17.)

Plaintiff started the loan modification process August 25th 2014 where he was promised that "any foreclosure will not filed due to having a case #2216341 and starting the loan modification process." (Comp. ¶ 18.)

On or about September 13, 2014, Plaintiff received oral and recorded conversation from Nationstar acknowledging receipt of his request for a loan modification and a request for more documents. Mr. Plaintiff was assigned a single point of contact, Jasmine Russell. (Compl. ¶ 19.) Plaintiff called Jasmine Russell and left voicemail. (Compl. ¶ 19.)

PLAINTIFFS' OPPOSITION TO DEFENDANT NATIONSTAR'S MOTION TO DISMISS         7
MEMORANDUM OF POINTS AND AUTHOPRITIES IN SUPPORT THEREOF

From October 13, 2014 through November 13, 2014, Plaintiff repeatedly tried to speak with Jasmine Russell but had to leave message or speak with other Nationstar representatives. (Complaint ¶ ¶ 21-35.)

On or about October 15, 2014 Plaintiff called Nationstar and was informed by a Nationstar representative that additional documentation was needed. Plaintiff asked "…if these documents are sent in does this represent a complete package?" and was told yes. (Compl. ¶ 21.) This practice of asking for more documentations, the non-confirmation of documents received as required by HBOR, and the inability to speak with his SPOC continued for several more weeks. (Compl. ¶ ¶ 21-27.)

On or about October 30, 2014, Plaintiff called Nationstar and spoke with Adam H. ID 510677 who was with the Bankruptcy Dept. Plaintiff asked to speak with someone in the Loan Modification Dept. and was told he was not allowed to speak with that department. Plaintiff stated he was trying to determine whether his loan modification package was complete following the most recent documents emailed in on October 27, 2014. Adam stated that it is their procedure to review all documents received within 24 hours of receipt, if the package is "complete" then the file is submitted to Wells Fargo underwriter and then an answer as to approval or denial can be expected within a week. Plaintiff indicated that he had not received any confirmation of receipt of any of the documents he had sent in over the past two months. Adam also told Plaintiff that until a "complete" package is received and sent to the lender's underwriter that the foreclosure process would not be suspended. (Compl. ¶ 28.)

On or about November 13, 2014, Plaintiff called Nationstar and was told that documents were still missing, expressly the explanation letter, which has been sent twice already. Plaintiff resent the explanation letter again. Plaintiff was told to call back on November 19, 2014. (Compl. ¶ 35.)

The 90 day reinstatement period under the Notice of Default was set to expire on November 24,

2014. Plaintiff worried that a Notice of Trustee Sale ("NTS") was going to be filed before he could get an approval or denial from Nationstar and therefore felt he had no option but to file this law suit and request a Temporary Restraining Order/ Preliminary Injunction to protect his home.

## II. LEGAL ARGUMENT

### A. Legal Standard – Federal Law Disfavors Dismissal and Refers To "Beyond a Doubt"

Motions to dismiss are not favored. See, e.g., *United States v. City of Redwood City*, 640 F.2d 964 (9th Cir. 1981) (the accepted rule is a complaint is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [citations omitted].) "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (U.S. 2007). After *Bell*, the basic "notice" pleading standard remains the rule in federal courts. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). Rule 12 is viewed in context with Rule 1 – which articulates the primary goal of a just adjudication on the merits. *See, e.g. Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957. "A complaint should be dismissed only if it appears beyond a reasonable doubt that even if the paintiff's factual allegations are true, he or she would still not be entitled to relief." *Edwards v. Direct Access, LLC*, 121 Nev. 929. 931, 124 P.3d 1158 (2005).

If the Complaint is deemed defective, an opportunity to amend should be afforded. *Public Utility Dist. No. 1 of Grays Harbor County Wash. V. IDACORP, Inc*. 379 F.3d 641 (9th Cir. 2004). Plaintiff hereby requests an opportunity to amend pursuant to Fed.R.Civ.P. 159a, should the Court view the Complaint as defective. A court should "freely give leave to amend when justice so requires." *See, e.g. Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983.

In considering a motion to dismiss, "[a]ll allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the non-moving party, but conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Simpson v.*

PLAINTIFFS' OPPOSITION TO DEFENDANT NATIONSTAR'S MOTION TO DISMISS          9
MEMORANDUM OF POINTS AND AUTHOPRITIES IN SUPPORT THEREOF

*AOL Time Warner, Inc*. 452 F.3d 1040, 1046 (9th Cir. 2006 (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp*., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

The issue is not whether the Plaintiff ultimately will prevail, but whether he may offer evidence in support of his claims. *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Consequently, the Court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts to support his claim".

**B.  Plaintiff Does Not Fail to State A Claim For Breach of Contract Against Nationstar.**

Defendant contends Plaintiff cannot state a claim for breach of contract against Nationstar because Plaintiff bases this claim on TPP to which Nationstar was not a party. (MTD Pg. 4 L:27-28).

Plaintiff alleges TPP with BANA created an enforceable contract which Nationstar as servicer and should have honored, and that the contract survived the assignment of beneficial interest of the deed of trust to Nationstar. (Compl. ¶ 38.)

Nationstar claims the TPP "terminated" if BANA did not provide a permanent modification by the "Modification Effective Date" of January 1, 2009 (Plaintiff believes Defendant meant January 2, 2010, not 2009 as the last TPP payment paid December 1, 2009.) (MTD Pg. 5, L's 8-12.) Nationstar provides case law to support this claim of termination of TPP. However, there have been numerous case holdings that support the premise that the lenders or servicers must follow HAMP guidelines. The Court in *West v. JP Morgan Chase Bank NA*, 214 Cal.App.4th 780, 781 (2013), stated "After the trial period, if borrower complied with all terms of TPP – including making all required payments and providing all required documentation – and if the borrower's representation remained true and correct the servicer **had** to offer a permanent modification." See Supp. Dir. 09-0)". Further stating "if the borrower complies with the terms and conditions of the [TPP] the loan modification will become effective on the first day of the month following the trial period." Id 781.

Plaintiff executed the TPP, made the required payments, and affirmed that all representations made still remain true and correct thus the loan modification would have become effect on January 1, 2010. (Compl. ¶12.)

Nationstar states that even if TPP survived the termination date that any obligation (under TPP) would have been terminated by Plaintiff's bankruptcy. (MTD P. 5, L's 14-17.) Nationstar attached a partial copy of Plaintiff's bankruptcy filing. (RJD Ex. 2). Missing from Defendant's Request for Judicial Notice Exhibit 2 are all of the Schedules. Specifically, the Debtor's Statement of Intention in which Plaintiff states "If retaining the property I intend to (box checked "other") "Debtors are interested in working out possible modification.'" Plaintiff intended to keep his home and this statement acknowledges the loan (reaffirmation) and the loan's continued existence.

While it appears both BANA and Nationstar as servicers and note holders misinterpreted the bankruptcy and HAMP guidelines, it does not change the facts that a permanent loan modification should have been completed. BANA stalled until it sold the servicing then the loan, and Nationstar as servicer did not review the file appropriately to discover the existing contract.

DAMAGE STATEMENT – interest, late fees, property tax penalties, while Plaintiff will be able to enumerate the types damages, the exact amount of damages would have to presented at trial.

Therefore, Defendant's Motion to Dismiss the first cause of action must be overruled. Plaintiff respectfully requests that if the court deems these allegations insufficient, Plaintiff should be granted leave to amend.

**C.  Plaintiff 's Does Not Fail to State A Claim for Breach of The Implied Covenant of Good Faith and Fair Dealing Against Nationstar**

Defendant claim that Plaintiff's claim fails because it is a derivative of the First Cause of Action

(MTD Pg. 6 L's 14-15.)

Plaintiff will admit that Nationstar was not in privy with him under the TPP initially.

California Civil Code 2923.4(a) states "(a) The purpose of the act that added this section is to ensure that, as part of the non-judicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure."

Although the provisions of the HBOR had not yet become effective at the dates relevant to the action in *Alvarez v.***Error! Reference source not found.** *BAC Home Loan Servicing*, 228 Cal.App.4th 941 (2014) "the legislation nonetheless 'sets forth policy considerations that should affect the assessment whether a duty of care was owed to [plaintiff] at that time. Much of the conduct that Plaintiff alleges breached a duty of care in this case – failing to process the applications in a timely manner, dual tracking and losing documents – is conduct now regulated by HBOR. While the explicit articulation of the lender's duties was not available when Plaintiff applied for loan modification, these obligations fall well within the duty to use reasonable care in processing of a loan modification. Recognizing this general duty will not place an undue burden on mortgage banks and servicers, nor will it have a chilling effect on borrowers' ability to obtain loan modification." *Id*. 943.

Plaintiff alleges that Nationstar breached their duty 1) by not recognizing the honoring the existing TPP that was executed by Plaintiff (Comp. ¶53); 2) by not working with Plaintiff during the modification process in good faith by the inability to speak with his "assigned point of contact" (Compl. ¶¶ 18-22); 3) the violations of the Homeowner's Bill of Rights as to notifications and communications requirement; the continued request for additional documentation to allow them to claim they never received a "complete" loan modification package (Compl. ¶ 67; 4) and the misstatement, intentional or negligent, that Nationstar does not have to suspend the foreclosure until the "complete" loan modification package is in the hands of the lender's underwriter (Comp. ¶ 28).

PLAINTIFFS' OPPOSITION TO DEFENDANT NATIONSTAR'S MOTION TO DISMISS    12
MEMORANDUM OF POINTS AND AUTHOPRITIES IN SUPPORT THEREOF

Plaintiff have alleged various potentially viable damages, including accrued interest, late payments fees, as well as the impending loss of his home through foreclosure sale.

Therefore, Defendant's Motion to Dismiss the second cause of action must be overruled. Plaintiff respectfully requests that if the court deems these allegations insufficient, Plaintiff should be granted leave to amend.

### D. Plaintiff Does Not Fail To State A Claim For Violation Of The Homeowner's Bill of Rights ("HBOR") Against Nationstar.

Signed into law on July 11, 2012 and effective January 1, 2013, the California Homeowner's Bill of Rights ("HBOR") explicitly provides a private right of action against loan servicers and trustees for their conduct during foreclosure, as well as during the loan modification application submission and review processes. (Compl. ¶ ¶ 59-61).

As amended, the California Civil Code also mandates that upon a borrower's request for foreclosure avoidance options, a mortgage servicer must establish a "single point of contact," with whom the borrower will deal throughout the application process.[1] Despite Nationstar's voluntary assignment of a "Dedicated Loan Specialist, Jasmine Russell" (Compl. ¶ 19) the fact that Jasmine Russell was nevertheless consistently unavailable at critical times falls far short of this requirement. Further, Plaintiff was told by the numerous representatives of the Bankruptcy Department, this is where he calls would be routed to, that he was not allowed to speak with anyone in the Loan Modification Department. (Compl. ¶28).

---

[1] Under Cal.Civ.Code §2923.7, a 'single point of contact" is responsible for [c]ommunicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options," "[c]oordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application," "[h]aving access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative," "[e]nsuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any," and "having access to individuals with the ability and authority to stop foreclosure proceedings when necessary."

1  Defendant claims that Cal. Civ. Code § 2923.6 subd. (g) states in part that "setting for that
2 whether an application is complete is a determination for the loan servicer.) (MTD Pg. 8 L's 14-17).
3  Nationstar representative Adam H., told Plaintiff that until a "complete" package was received
4 By Nationstar and then submitted to the "lender's" underwriter that the foreclosure in progress would not
5 be suspended. (Comp. ¶ 28). Defendant is misconstruing what a "complete" package and disregards
6 federal case rulings which addresses the issue of "facially complete" loan applications.
7
8  Plaintiff had been told numerous times that his package was complete, but then someone other
9 than Jasmine Russell contacted him via telephone or email and asked for more documents, this implying
10 that his loan modification application is incomplete. (Compl. ¶ ¶ 29 – 35). Nationstar controlled the
11 modification review process, and was simultaneously exercising the power of foreclosure.
12
13  The actions of Nationstar are the same actions that HBOR was established from which to protect
14 Homeowners as discussed above. Further, 2014 court stated in their holding that Borrower's submission
15 of document, even while asked for additional documents, that "Based on these allegations, and drawing
16
17 all reasonable inferences in favor of Plaintiffs, the court finds it plausible that the loan modification was
18  complete and Defendant violated Cal. Civ. Code § 2923.6(c) when it recorded a 'notice of sale'…while
19 the complete first lien loan modification [was] pending. *McKinley v. CitiMortgage, Inc*. 13-cv-1057-
20 TLN-CKD, 2014 WL 651917 at 1.
21
22  Plaintiff admits that to date no NTS has been recorded, but had he not filed this law suit he would
23 have lost his home based on the above violations.
24
25  Therefore, Defendant's Motion to Dismiss the third cause of action must be overruled. Plaintiff
26 respectfully requests that if the court deems these allegations insufficient, Plaintiff should be granted
27 leave to amend.
28
**Plaintiff Has Stated Facts Sufficient To State A Claim For Negligence Against Nationstar.**

PLAINTIFFS' OPPOSITION TO DEFENDANT NATIONSTAR'S MOTION TO DISMISS        14
MEMORANDUM OF POINTS AND AUTHOPRITIES IN SUPPORT THEREOF

Without a doubt, the cause of action for Negligence should have been more artfully plead. For east of comprehension, Plaintiff presents a brief summary of recent case law on the duty element of negligence in residential mortgage servicing and requests leave to amend.

Defendant claims Nationstar owed no duty to Plaintiff (MTD Pg. 8 L's. 21-28).

A. <u>When a loan servicer solicits a loan modification or otherwise agrees to consider a homeowner for modification, recent case law in this district has held that duty of care may be found.</u>

The Court in *Segura* held that under *Alvarez*, "a duty of care exists once the lender offers borrowers the opportunity to apply for a modification." *Sequra v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 143038, at pg. *29 (C.D. Cal. Sept. 26, 2014, referencing Alvarez v. BAC Home Loan Servicing, L.P. 228 Cal.App.4th 941. Here, Nationstar solicited the modification application from Plaintiff, misinformed him of the length of time

that he would be in the modification process, and failed to property process Plaintiff's modification each and every time he was reviewed.

Defendant succinctly states case law stating holdings showing no duty, and at the same time shows holdings indicating a duty by servicers to borrowers. (MTD Pg. 8, L's. 26-28, Pg. 8, L's. 1-21). Although Defendant provides several out-dated cases related to negligence generally, Plaintiff would like to bring the recently decided cases:

The overwhelming majority of recent case law agrees that a duty can exist for loan servicers once they have agreed to consider a borrower for a modification. *McGarvey V. JP Morgan Chase Bank, N.A.*, U.S. Dist. Court, ED, California, October 10, 2013, denied a motion to dismiss because, once the loan servicer offered a loan modification and processed the application, the servicer could have a duty to exercise ordinary care in processing the loan modification request. *Kennedy v. Wells Fargo Bank, N.A.* (citationd found that the totality of the circumstances favored finding a duty of care at the motion to dismiss stage.

*Garcia v. Ocwen Loan Servicing, LLC*, 2010 U.S. Dist. LEXIS 45375 (N.D. Cal.) found that a servicer had a duty of care to a borrower under the *Nymark* factors.

*Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 64-65 (2013, held that while a lender does not have a duty to offer or approve a loan modification, "a lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale." The *Lueras* court further cited to other district court decisions recognizing that a lender does owe a borrower a duty of care in negotiating or processing an application for a loan modification. *Penermon v. Wells Fargo Home Mortgage*, 2014 U.S. Dist. LEXIS 71992 (N.D. Cal. May 22, 2012 held that allegations that "the lender failed to properly process the loan modification application it had solicited stated a claim for purposes of the motion to dismiss."

In this district, the court in *Banks* stated: "Taken together, these cases establish that traditional money-lending activity does not create a duty of care, and that a loan modification if generally deemed a traditional money-lending activity (*Lueras*.) They also support the conclusion that servicers conduct during the modification negotiation process may create a special relationship and a resulting duty of care (*Alvarez) Banks  v. JPMorgan Chase Bank, N.A.*, 2014 U.S. Dist. LEXIS 164565, at *32 (C.D. Cal. Nov. 19, 2014.

B. <u>Plaintiff has plead sufficient facts at this pleading only stage to state a valid claim against Nationstar for negligence related to the servicing of his residential Mortgage.</u>

At the time this complaint was filed, Plaintiff believed the Nationstar representative who told him that the foreclosure would not be suspended. (Compl. ¶ ¶28 and 67.)

It is the latest law, the Homeowners Bill of Rights, which has led California Courts to conclusively hold that the loan modification review process is one where the lender/servicer owes a duty to the borrower, and the breach of such duty gives rise to a cause of action for negligence.

While Plaintiff agrees that the negligence cause of action itself if poorly please as to Nationstar, Plaintiff has plead significant facts related to Nationstar's handling of his loan modification application that would lead to a tort claim against Nationstar. Plaintiff requests leave to amend this cause of action to separate the claims as they relate to BANA and as they relate to Nationstar. If granted, Plaintiff will amend the complaint to include two separate causes of actions for negligence related to the specific actions of each party. Plaintiff further requests leave to amend to include a cause of action against Nationstar for negligent misrepresentation related to his loan modification according to *Lueras*.

As please in the Complaint, Plaintiff has shown that Nationstar significantly participated in Plaintiff's loan modification application. Plaintiff was misinformed by Nationstar regarding the SPOC and that the foreclosure does not have to be suspended under the "dual tracking" prohibition under HBOR. Plaintiff was damaged by resulting fees and penalties he would not otherwise have incurred – amounts that have eaten away at the equity in Plaintiff's property.

Therefore, Plaintiff respectfully requests that if the court deems these allegations insufficient, Plaintiff should be granted leave to amend to more clearly state his causes of action as they relate to the actions of Nationstar based on the facts as plead.

**E.   Plaintiff's Claim for Declaratory Relief.**

Plaintiff will concede that this cause of action is a remedy and if the court grants leave to amend will be removed from the Complaint.

**F.   Plaintiff Does Not Fail To State A Claim For Injunctive Relief.**

Defendant's only argument is that injunctive relief is a remedy.  (MTD Pg. 10 L's 26-27).

At the time of filing this Complaint, Plaintiff was under the belief that a Notice of Trustee Sale would be recorded within a week, had been told that the foreclosure would not be suspended, and had not received any approval or denial on his loan modification request with Nationstar.

PLAINTIFFS' OPPOSITION TO DEFENDANT NATIONSTAR'S MOTION TO DISMISS         17
MEMORANDUM OF POINTS AND AUTHOPRITIES IN SUPPORT THEREOF

Case 2:14-cv-02954-TLN-DAD   Document 14   Filed 02/05/15   Page 18 of 18

Plaintiff will concede this cause of action at this time as there has been no Notice of Trustee Sale filed to date.  But Plaintiff will reserve his right to file for an ex parte hearing for a TRO and Preliminary Injunction should Defendant Nationstar recorded a Notice of Trustee Sale.

**CONCLUSION**

Based on the foregoing arguments Plaintiff respectfully request that the Motion to Dismiss Complaint by Defendant Nationstar be denied.  Should the Court deem these allegations insufficient, Plaintiff respectfully requests leave to amend.

Dated:  February 5, 2015

                                               */s/ Rita M. Lingwood*_____

                                               Rita M. Lingwood, Attorney for

                                               Plaintiff Christian A. Romero

PLAINTIFFS' OPPOSITION TO DEFENDANT NATIONSTAR'S MOTION TO DISMISS      18
MEMORANDUM OF POINTS AND AUTHOPRITIES IN SUPPORT THEREOF